## SAMUEL SAWYER, JR. *versus* MARK R. HOPKINS.

The rule of practice seems to be, that the plaintiff should have the opening and closing of his cause, whenever the damages are in dispute, unliquidated, and to be ascertained by the jury; and therefore in actions of slander, where the defendant, in pleading, admits the speaking of the words, and avers that they were true, and does not plead the general issue, the plaintiff is entitled to open and close.

Where the defendant, in an action of slander, has pleaded a special justification, admitting the speaking of the words, and averring that they were true, without pleading the general issue, the plaintiff may give evidence, other than what is furnished by the plea itself, of the extent and degree of malice, actuating the defendant, in traducing the plaintiff, to affect the question of damages.

And it may well be doubted whether the defendant, in such case, by relying upon his justification solely and failing to sustain it, is precluded from giving evidence in mitigation of damages.

Sawyer *v.* Hopkins.

In such action of slander, where it appeared that the plaintiff, a minister of the Gospel, had been tried before a conference upon a charge of having made alterations in certain charges of immoral conduct, signed by others, against one of his brethren in the ministry, for the purpose of procuring an investigation thereof; and the present defendant, on such trial of the present plaintiff, had been active against him, and in connexion with which the charge of forgery had been made by the present defendant against the present plaintiff; and the truth of which had been set up as a special justification on the present trial ; *it was held,* that the plaintiff might give in evidence the proceedings at the trial before the conference in aggravation of the damages.

The mere insertion of other matter in the charges against such third person in an additional specification, would not constitute the crime of forgery, unless it was done with the intent to defraud or deceive some one.

When the defendant, in an action of slander, has placed his defence upon the ground, that certain papers were the subjects of forgery and had been forged, he has no cause of complaint, if the presiding Judge suffers the cause to proceed to trial, and does not instruct the jury that the papers were not the subjects of forgery, even if they were not so ; for if the instruction had been, that they were not the subjects of forgery, the plaintiff could not have been guilty of that offence, and the instruction must then have been, that the defence had not been made out.

If the plaintiff altered those charges, after they had been signed, with praiseworthy intentions, relying upon that confidence he had been accustomed to experience from the brethren of his church, while endeavoring, in pursuance of their instigations originally, to bring a member of the same denomination to an examination as to charges against him, supposed to be susceptible of proof, such alteration is not a forgery.

A verdict may be put in form, and affirmed, after the jury have in substance found to the same effect.

A juror who has been implicated in reference to a verdict, which he may have given, is admissible to remove the ground of objection.

THIS was an action of the case for slanderous words, alleged to have been spoken by the defendant, accusing the plaintiff of forgery.

The defendant justified by pleading the truth of the words spoken. In two of the pleas the defendant set forth the documents alleged to be forged ; and in the other two pleas the justification was general, describing the forgery of the instruments in general terms. An issue was tendered in the replication to each plea and joined.

The defendant thereupon took the opening and the close of

the case ; and introduced testimony tending to show that the plaintiff had forged the documents set forth in the pleas.

The pleadings were referred to, but were not to be copied as part of the case, and no copies of them were found in the papers.

It appeared that the plaintiff and defendant were both ministers of the Methodist Church. The plaintiff contended, that what was alleged to be his trial, at which the allegation of forgery was made by the defendant, and at which the defendant, was active against the plaintiff, and his pretended dismission and proceedings thereat, were unjust and oppressive, and that he claimed time to maintain his defence, which was denied him, and that he was hastily convicted, by said conference, upon charges which were not properly preferred against him, and of which he had not proper notice ; and offered testimony to support these positions. This testimony was objected to by the defendant, as being foreign and immaterial to the issue, and as raising a false issue, and tending to mislead the jury. But WHITMAN C. J. presiding at the trial, overruled the objections and admitted the testimony, (which was copious and in some measure contradictory) as evidence of malice, and as having a tendency to affect the question of damages.

The Judge in his charge to the jury stated, that it was very questionable whether the documents alleged to have been forged were properly subjects of forgery. That forgery was ordinarily committed where a person had something to gain by it in a pecuniary point of view or otherwise. But in this case, this question need not be considered, as the pleadings amounted to an admission that the defendants had accused the plaintiff of the crime of forgery and that the instruments in question were such that the crime might be committed in the exhibition and use of them. That it only remained to determine whether the fabrication and alteration of them had been done with base and sinister views. If not, the crime of forgery had not been committed, and the justification in such case would not be made out.

It appeared that a paper containing certain charges of immoral and unchristian conduct against the Rev. Joseph Turner, a Methodist minister, was drawn up by the plaintiff, at the request of William Morrell, as was alleged, and signed by said Morrell and witnessed by Thomas Morrell, and afterwards signed by Moses Plummer, and addressed to the presiding Elder, Paul C. Richmond, for the purpose of bringing said Turner to trial on said charges. William Morrell testified, that he gave the plaintiff authority to use his name to any paper necessary to bring said Turner to trial on those charges, and that he then supposed the papers he had signed might not be in proper form for that purpose ; and that the plaintiff told him at that time, it would be necessary to draw up specifications in proper form ; that about two weeks after, he saw the plaintiff and told him to insert a new charge in the paper he (witness) had signed about the violation of the Sabbath in connexion with Churchill's horse ; that he heard Thomas Morrell at the same time, give the plaintiff authority to use his name as a witness to any other paper necessary to bring said Turner to trial properly ; but Thomas Morrell, being called by the plaintiff, did not recollect of giving the plaintiff any such authority to use his name as a witness to any paper, that he did not sign. Moses Plummer called, by defendant, testified that he signed only the first mentioned paper, which had been previously signed and witnessed by said Morrell and that he never gave the plaintiff any authority whatever to use his name to any other paper ; and that when he signed the paper the plaintiff wanted to insert the charge about Churchill's horse, and that he refused to have it inserted, because he did not believe that charge to be true.

Ivory H. Pike, called by the plaintiff, testified that about a month after the paper signed by Plummer and others was executed, viz. about April 25, 1841, he was in conversation with said Plummer, and the plaintiff came up and said to Plummer, " I have copied off those charges and put in the Churchill affair and am going up, the next day, to hand them to the presiding Elder," and that Plummer replied, " that he had seen

Brother Turner and had told him that he had signed charges against him," and that the plaintiff immediately passed away, and this was all that was said between the plaintiff and Plummer.

Plummer, called again by the defendant, contradicted said Pike on this part of his testimony.

Paul C. Richmond, the presiding elder, called by the defendant, testified, that the plaintiff presented to him, as presiding elder, a paper which he, the plaintiff, said bore the signatures of said Morrell and Plummer, and of which he, the witness, took an exact copy, by the plaintiff's request, to furnish to the circuit preacher, Rev. L. S. Stockman, with orders for him to take the usual steps to bring said Turner to trial ; that the copy he took is in the case, and that the original he handed back to said plaintiff.

The defendant requested the Judge to instruct the jury that even if they should find that the plaintiff had the authority or assent of the signers to insert the said charge about the Churchill horse, in the charges they had signed against said Turner, yet if they did not find that the plaintiff had authority to insert other substantial specifications in the paper alleged to be forged, that paper would be forgery.

This instruction the Judge declined giving.

The jury returned the following verdict. " State of Maine. Cumberland, ss. Supreme Judicial Court, November Term, 1842, *Samuel Sawyer, Jr.* v. *Mark R. Hopkins.* The jury find for the plaintiff, and that the said plaintiff has not been guilty of forgery. The jury assess damages for the plaintiff the sum of two hundred and fifty dollars."

" $250,00.　　　　　　　William Gerrish, Foreman."

The Judge directed the plaintiff's counsel to reduce the verdict to proper form, and he thereupon, wrote a verdict as follows. " State of Maine. Cumberland, ss. November Term, 1842. *Samuel Sawyer, Jr.* v. *Mark R. Hopkins.* The jury find that the said defendant of his own wrong spoke, uttered and published the false, scandalous and malicious words and charges in the plaintiff's writ and declaration set forth, without

any such justifiable cause, as he in his several pleas has set forth, and assess damages for the plaintiff in the sum of two hundred and fifty dollars."

The defendant objected to the language of this verdict, and to the verdict itself; and to its being affirmed; but the Judge overruled the objection and pronounced this verdict to be in proper form; and directed that it should be affirmed; and it was accordingly affirmed and recorded. To the rulings, directions and orders of the Court the defendant excepted.

There were also motions to set aside the verdict for several causes, which, with the evidence, will be sufficiently understood from the opinion of the Court.

*Howard & Osgood* argued for the defendant, contending, that in an action of slander, where the truth is pleaded in justification, and there is no other plea, the issue is upon the truth of the facts; and no evidence is admissible, which does not tend to prove, or disprove, the issue joined. *Sperry* v. *Wilcox,* 1 Metc. 270; 1 Stark. Ev. 330; 2 Stark. Ev. 223.

The evidence permitted to be given of the trial of the plaintiff, his dismission, and the alleged oppression, were remote facts, could not prove or disprove the issue, were calculated to prejudice and mislead the jury, and should not have been admitted. It was not admissible as evidence of malice, or in aggravation of damages under the issue. When the defendant pleads the truth in justification, and fails in his proof, it is conclusive evidence of malice, and he is precluded from an attempt to mitigate damages by proving an honest intention, or mistake, or that he had reason to believe that the words spoken were true. *Larned* v. *Buffington,* 3 Mass. R. 553; *Alderman* v. *French,* 1 Pick. 19; *Bodwell* v. *Swan,* 3 Pick. 377; *Jackson* v. *Stetson,* 15 Mass. R. 48; *Hix* v. *Drury,* 5 Pick. 296; 2 Campb. 254; *Smith.* v. *Wyman,* 16 Maine R. 14. If the defendant, under the pleadings, could not introduce evidence in mitigation of damages, the plaintiff could not in aggravation thereof, no special damages being alleged. 2 Stark. Ev. 465.

If the documents were not the proper subjects of forgery, as

stated by the presiding Judge, then he should have instructed the jury, that the action could not be maintained. If no forgery could be committed, the words were not in themselves actionable; and no special damage being alleged, the action cannot be maintained. The pleadings of the defendant admit only the facts, and cannot alter the character of the document alleged to have been forged. If not forgery aside from the pleadings, it is not made so by them.

But these instruments were properly subjects of forgery. At common law, " forgery is the false making or alteration of a written instrument with intent to defraud or deceive." 2 Russ. on Cr. 317 ; 2 Ld. Raym. 1461 ; *State* v. *Ames*, 2 Greenl. 365 ; Rosc. Cr. Ev. 381 ; 2 East's P. C. 852 ; 2 Binney, 332.

The Court should have given the last requested instruction. The plaintiff stated to Richmond that the paper presented to him by the plaintiff contained the signatures of the Morrells and Plummer, which was untrue. It was false and exhibited as genuine, and therefore was forged and counterfeited, with the intent to deceive another. 2 East's P. C. 972.

The verdict in its present form ought not to have been affirmed. That returned by the jury properly stated the facts found by them. In the verdict affirmed, there are facts stated, which were not found by the jury, and language introduced, which the jury did not, and could not properly use. Neither the counsel nor the Court had a right to do any thing more than to have the verdict reduced to proper form. They had no right to introduce new matter of fact or of law.

It was contended that the verdict was against evidence.

In commenting upon the alleged improper conduct of a juror, it was said, that the testimony of the juror ought not to have been received; and 3 Bro. & Bing. 272 was cited.

*Deblois* argued for the plaintiff, and contended, that the Judge did not err in allowing evidence of the facts accompanying the uttering of the slander, because they furnished legitimate evidence of the malice with which the words were spoken, and properly went to fix the damages. And this evidence may be given either on the general issue, or on a traverse

of a justification. *Larned* v. *Buffington*, 3 Mass. R. 546; *Coffin* v. *Coffin*, 4 Mass. R. 1; Chitty's Prec. 641, note; 2 Stark. Ev. 869; 7 Car. & Pay. 163; 1 Campb. 49; *Bodwell* v. *Swan*, 3 Pick. 376; *Bodwell* v. *Osgood*, ib. 379; 3 Binney, 550; *Allen* v. *Perkins*, 17 Pick. 369; *Smith* v. *Wyman*, 4 Shepl. 13.

The Judge might well doubt whether a paper like the one in question could be the subject of forgery, where there was no pecuniary interest involved. 2 Hawk. P. C. c. 70, § 11; 2 Russel on Cr. 1455; 2 East's P. C. 862. But be this as it may, the ruling of the Judge rendered this question immaterial.

This ruling was, that under the particular form of these pleadings, and for this trial, it was admitted by the pleadings, that these instruments might be the subject of a forgery, and that if they were altered for base and sinister purposes, it was a forgery. This was beneficial to the defendant, for otherwise he failed in the defence set up; the *quo animo* with which the papers were altered, is a necessary ingredient of the crime of forgery. If not made with any base or sinister motive, the alteration does not amount to a forgery. 2 Hawk. c. 70, § 11; 2 Russ. on Cr. 1467; 2 East's P. C. 854. And the Judge rightly left the intent to be found by the jury. *Smith* v. *Wyman*, 4 Shepl. 14; 2 Chitty's Pr. 642, note; 3 Esp. Cas. 133; 6 Car. & P. 675.

The refusal of the Judge to charge as the defendant requested, is justified on two grounds. 1. He had already substantially charged as requested; and 2. The Judge was right because there was no fact of which the defendant offered any proof, which called for such instruction. *Hammatt* v. *Russ*, 16 Maine R. 171; *Irving* v. *Thomas*, 18 Maine R. 418.

The verdict of the jury, as affirmed by order of the Judge, was unexceptionable. The defendant pleaded that the plaintiff had been guilty of forgery, and the plaintiff replied, that the defendant of his own wrong, spoke, uttered and published the false, scandalous and malicious words, set forth, &c. without any such justifiable cause, as he in his several pleas has set forth. The informal verdict substantially found, that the plain-

tiff was not guilty of the forgery. The burthen of proof was on the defendant to prove that the plaintiff was guilty. The amended verdict merely put into form, what the jury had found, as is lawful and common. *Sperry* v. *Wilcox*, 1 Metc. 267.

The replication, made in this case, was the proper one. 2 Chitty's Pl. 642, note; 1 Saund. 244, note 7; 1 B. & Pull. 76.

He also contended, that a new trial ought not to be granted for the causes set forth in the motions. To show that the juror was rightfully permitted to state the facts in relation to his own conduct, he cited *Haskell* v. *Becket*, 3 Greenl. 92, and *Taylor* v. *Greely*, ib. 204.

The opinion of a majority of the Court, SHEPLEY J. dissenting, was afterwards drawn up by

WHITMAN C. J. — This is an action of defamation. The defendant, in pleading, admits the speaking of the words, and avers they were true; and does not plead the general issue. He was, thereupon, permitted to open and close in his defence. We are not prepared, however, to have this instance drawn into precedent, so as to become obligatory hereafter. It is true that, in *Ayer* v. *Austin*, 6 Pick. 225, Mr C. J. Parker states it to have been the practice, in such cases, to allow the defendant to open and close. He however, treats it as a question of practice; and professor Greenleaf, in his Treatise on Evidence, Part 2, c. 3, so regards it. Accordingly the fifteen Judges of England, (*Carter* v. *Jones*, 6 C. & P. 64,) have adopted a rule, that, in actions for slander, libel, and for personal injuries, although a justification alone be pleaded, yet, that the plaintiff shall open and close. Mr. Greenleaf, in the chapter above referred to, would seem to have collected together all the learning upon the subject, and the rule suggested by him, as indicated by the weight of authority, is apparently simple, and easy of application, and in accordance with sound sense, and practical utility. It is, that the plaintiff should have the opening and closing of his cause whenever the damages are in dispute,

unliquidated, and to be ascertained by the jury ; and this is uniformly the case in actions of slander. In actions of trespass *qua. clau.* where title to the *locus in quo* is alone the matter in controversy, and in many other cases where the defendant's plea so far admits the allegations of the plaintiff, that he must recover the precise amount, or the thing claimed, if any thing, it would be otherwise.

The first position contended for by the defendant, under his bill of exceptions, would seem to be, that, as he has pleaded a special justification, the plaintiff could not be permitted to give evidence, other than what is furnished by the plea itself, of the extent and degree of malice, actuating the defendant, in traducing the character of the plaintiff. This is ground which we cannot believe to be tenable. It would be singular indeed if the defendant could be guilty of all manner of outrage in his endeavors to prostrate the reputation of his neighbor, and then, by pleading a special justification, which he could not sustain, shut the plaintiff's mouth, and place him in a predicament, in which a jury might not be let into a knowledge of any special reason for awarding him any thing more than nominal damages. If the defendant should fail to support his justification, he merely admits the allegations in the writ to be true. These are merely formal, and do not indicate the precise amount of damages to be recovered. The same admission would be made by a default or a demurrer in all actions of tort ; yet nominal damages only would, in such cases, be awarded, in the absence of further proof to show the actual amount of damage sustained. It is true that it has been adjudged, in the courts of Massachusetts, and while we were a part of that State, that pleading a justification in an action of slander, and failing to prove it, was to be regarded as an aggravation of the malice ; but it was never heard of, that other evidence, tending still further to aggravate the malice was, in such cases, inadmissible. Much, very much must always depend upon the circumstances under which slanderous words may be uttered. The place where, the time when, the number of the repetitions, the number of persons present, the hostile

object in view, and every other concomitant of the outrage are to be taken into view in estimating the injury the plaintiff may have received. And these cannot be excluded by a plea of justification, any more than by a default or by a plea of any other kind.

It is argued, that the introduction of such evidence would raise a false issue, and one which the defendant could not be expected to come prepared to meet. How so, any more than in any other case of damage to be recovered? The issues to be joined in Court are never directly in reference to the damage to be recovered. In trover, trespass, assumpsit or case, whoever heard of any such issue? The damages are but an incident, which, if the issue joined be found for the plaintiff, are in controversy, and to be ascertained from evidence adduced by either party. Every defendant must know, that in an action of tort, if the cause of action be decided against him, a question of damages will thereupon arise, and that he must be prepared to meet it.

The defendant further urges, that, by relying upon a justification solely, and failing to sustain it, he is precluded from giving evidence in mitigation of damages. Be it so, and whose fault is it? Not that of the plaintiff. If the law be as he supposes, by pleading a false plea he places *himself* in such a predicament. Surely the plaintiff should not be abridged of any of his privileges by reason of such a misadventure on the part of the defendant.

But it may be doubtful if the defendant's premises, on this head, are quite correct. In *Larned* v. *Buffington,* cited by the counsel for the defendant, the Court did not so hold. The learned Chief Justice Parsons, in that case, says, " But we are not prepared to declare, that there are no facts or circumstances, from which the jury may mitigate the damages, under a special justification of the truth of the words, in which he shall fail." And there is no known rule of the common law inconsistent with this *dictum.* To me it would seem, that a defendant, who has a right to plead such a plea, as much so as to plead the general issue, though he may fail to support it,

should· be debarred of no privilege, any more in the one case, than in the other, except in so far as his plea of justification must be regarded as an admission of facts. In either case he does but fail of making out a legitimate ground of defence, which he was at liberty to attempt to establish. It is true that Mr. Justice Jackson, in *Alderman* v. *French*, 1 Pick. 1, remarked, that, " in the case of *Larned* v. *Buffington*, it is intimated, that evidence, tending to show that the defendant was, by the misconduct of the plaintiff, led into the belief, that he was guilty of the offence he had imputed to him, might, perhaps, be received in mitigation of damages, as well after a failure to prove a justification pleaded, as under the general issue." He then says, " We do not find this *dictum* supported by any authority." But here we may well inquire, what authority has been or can be adduced in opposition to it. The profound, erudite and discriminating mind of C. J. Parsons, aided as he was at that time by able associates, was not aware of any ; or of any reason why the defendant was in any such case, further than his plea must be taken to be an admission of facts, precluded from evidence in mitigation, as in other cases. And surely when the plaintiff offers evidence in aggravation, if not of the kind admitted, to a certain extent, by the plea of justification, the defendant should be allowed to rebut it. At any rate, it would seem, that this would be in accordance with the law as recognized before our separation from Massachusetts ; and we may well hesitate before we allow it to be otherwise established by any *dictum* since, uttered by any of the Judges of Massachusetts, however respectable they may be, (and this Court is behind none other in its respect for that learned bench,) if unsupported by authority.

In the case at bar the defendant does not appear to have been restricted in the use of testimony to rebut that introduced in aggravation. Indeed no ground of complaint of that kind is intimated. It is only contended, that the course of pleading could have given him no intimation to be prepared in reference to the question of damages. But he had, as before remarked,

the same intimation that every other defendant has when he tenders an issue, which he cannot support.

The defendant also complains, that the proceedings at, what was called, a trial of the plaintiff, in which the defendant was active, and in connexion with, and in furtherance of which the imputation was uttered by the defendant, were allowed to be exhibited. There was assuredly very little, if any reason, for such a complaint. The very papers which the defendant set out in several of his pleas in justification, were those used in the course of those proceedings, and on which they, mainly, if not wholly, purported to be bottomed, under the pretence that they were forgeries. Strange indeed would it have been, if the plaintiff could not have been let into a developement of the whole scene in reference thereto; to show the manner in, and effect with which the defendant urged his accusation; and the wantonness and flagrancy of his whole deportment; and the extent of the injury, which the plaintiff might be believed to have sustained in the laceration of his feelings, and destruction of his reputation. On looking into the case of *Larned* v. *Buffington*, it will be seen, although a special justification was set up, that a long train of evidence was gone into, showing the particular circumstances attendant upon, and connected with the utterance of the slander, whereby the degree of its malignity and recklessness became manifest. If a precedent to sanction such a developement as was resorted to in the case before us were wanted, the case just cited would seem to furnish it in the fullest extent. But who can doubt, if one man be pursuing another to his destruction, and, in aid of such an object, shall traduce and vilify him, that, in an action for the slander, he would have a right to give in evidence, not only the slanderous words, but the object of them, and the means used in pursuance of, and in connexion with them, with a view to the accomplishment of the object?

In the bill of exceptions it appears, that, " the counsel for the defendant requested the Judge to instruct the jury, that, even if they found that the plaintiff had the authority or assent of the signers to insert the said charges, about the

Churchill horse in the charges they had signed against the said Turner, yet, if they did not find that the plaintiff had authority to insert other substantial specifications in the paper alleged to be forged, that paper would be a forgery." In declining to give this instruction we do not see that the Judge erred. He could not say to the jury that the paper would be a forgery, without it had been made as defined in a quotation made by the counsel for the defendant, viz. "falsely with intent to defraud or deceive some one." The mere insertion, in the writing alluded to, of any additional specification could not have constituted it a forgery, unless it were made with an intent to defraud some one. The definitions of forgery, as contained in various authors, are collected in the 2 East's P. C. 853. He quotes Mr. Justice Blackstone as saying, that it "is the fraudulent making or alteration of a writing to the prejudice of another;" and Mr. Justice Buller as saying, it "is the making a false instrument with intent to deceive;" and Baron Eyre, in Taylor's case, as saying, "it is a false instrument made with intent to deceive." And in the word deceive, Mr. East says, "must doubtless be intended to be included an intent to defraud." And so it was defined, he says, by Grose J. in delivering the opinion of the Judges, in the case of *Parks* and *Brown,* viz. "the false making a note or other instrument with intent to defraud." And the same in substance by Eyre, Baron, in *Jones & Palmer.* In this case, although it is not so stated in the bill of exceptions, the plaintiff may have had such reliance upon the members of the church, over which he was placed, and may have had such evidence of the confidence they reposed in him, as to lead him to suppose they would assent to any course, which he might think proper to adopt, to bring a supposed offender to justice. He may have acted with innocence of intention, and in the belief that he was promoting the cause of religion and virtue, in making insertions of specifications without having consulted those, who had, at first, set the matter on foot. We are all aware of the implicit confidence often reposed, by the members of a church, in their pastor; leading him to presume upon their support in whatever

he may do with good intentions; and especially to promote the cause in which they are all engaged. It was a matter exclusively within the province of the jury to decide whether there was any such fraudulent intent, in whatever the plaintiff did, as is essential to constitute the crime of forgery. The Judge therefore could not have given the instruction desired.

The Judge, in his charge to the jury, is reported to have stated, "that it was very questionable whether the documents alleged to have been forged were properly subjects of forgery; that forgery was ordinarily committed by a person, who had something to gain by it in a pecuniary point of view or otherwise; but that, in this case, the question need not be considered, as the pleadings amounted to an admission, that the defendant had accused the plaintiff of the crime of forgery; and that the instruments in question were such, that the crime might be committed in the exhibition and use of them." Thereupon it is urged by the counsel for the defendant, that the Court should have decided that the instruments were or were not subjects of forgery; and if not, that the jury should have been instructed that the words were not actionable. But this would by no means follow. If the Court had decided that the instruments were not subjects of forgery, the instruction must have been that the defence had not been made out; for unless the instruments were subjects of forgery the plaintiff could not have been guilty of forgery in reference to them; and so the plea in justification would have failed. The counsel, nevertheless, still contends that the instruments were subjects of forgery at common law; and this is his proper ground of defence. If they were subjects of forgery, and have been forged, then his defence was complete; otherwise not. Surely the defendant has no ground for complaining that the Court did not instruct the jury that the instruments were not subjects of forgery. He has placed his defence upon the ground that they were so; and the Court suffered the cause to proceed upon that ground. And as the parties saw fit to make up their issues it was not the duty of the Court to have instructed the jury otherwise than to look to the matters put in issue. It may

be that the defendant's position, as to the nature of the instruments is correct. We do not feel ourselves called upon at this time to decide whether it is or not. The law, as laid down by Sergeant Hawkins, c. 70, § 8, 9 & 10, would be adverse to it. But the statutes, and even the decisions as at common law, Mr. East, in his P. of the C. p. 856, says, have greatly extended the range of instruments in regard to which forgery may be committed. As late as 1793, however, East's P. C. 862, one, who was committed to jail, under an attachment for a contempt in a civil cause, counterfeited a pretended discharge, as from his creditor to the sheriff and jailer, under which he obtained his discharge from jail. A minority of the Judges, and the Chief Justice among the number, the point being reserved, were of opinion that it was not forgery ; and the culprit was convicted of a misdemeanor only.

A motion has also been filed to set aside the verdict as against evidence, and against law. To set aside the verdict as against evidence it is urged, that Plummer, whose signature purports to be to the documents alleged to have been forged, positively swears, that he did not authorize his name to be put to them, and, with reference to certain specifications therein, that there is no pretence that he was contradicted in his testimony. But his credibility was for the consideration of the jury. There may have been good grounds, of which a bill of exceptions, or even a report of the evidence, if there were one, could exhibit no indications, for their not believing him. They had an opportunity of judging of the credibility of the witness by seeing him upon the stand, and hearing his examination and cross-examination ; by witnessing his capacity, his ability to recollect and narrate facts ; his peculiar traits of character ; his temperament ; his leaning towards one party, and his hostility to the other ; and could gather from all they could see and hear his partizan zeal, and the other influences under which he testified ; none of which could be fully displayed upon paper. We cannot know, therefore, however positively he may have testified, that the jury ought to have believed him.

But suppose the witness were credible, and even that the

jury believed every word he uttered, there would still be a question, and an essential one to be determined, viz. did the plaintiff do what he did otherwise than in the simplicity of his heart, and with praiseworthy intentions, relying upon that confidence he had been accustomed to experience from the brethren and sisters of his church, while endeavoring, in pursuance of their instigations, originally, to bring a member of the same denomination to an examination as to charges against him, supposed to be susceptible of proof? This was a question peculiarly within the cognizance of the jury. And it cannot be gathered or understood from any thing that we have before us, that their finding was not wholly for the want of proof, that should satisfy them of a fraudulent intent on the part of the plaintiff in what he did; without which they could not have found that he had been guilty of forgery. But verdicts are not to be set aside as against evidence except in cases of palpable and gross error on the part of the jury; for which we look in vain into the case as developed before us.

As to whether the verdict was against law, what we have already said will show that a new trial cannot be granted for any such cause.

It is furthermore urged, that the verdict should not have been affirmed, in its present form. The jury, it appears, returned a verdict substantially, and in their own language for the plaintiff. It was, however, not in the form coinciding with the issues, which had been joined. The pleas of the defendant, having been in justification, the reply was, that he uttered the false, scandalous and malicious words, of his own wrong, &c. upon which issue was joined. The Court therefore directed the verdict to be put in such form as was required by the issues. In that form it was affirmed. In finding for the plaintiff the jury necessarily found that the words were false, scandalous and malicious, and the verdict as amended was to that effect. The practice of putting verdicts in form to be affirmed, after the jury have found, in substance, to the same effect, is of such frequent occurrence, and the propriety of it is so obvious, that it is truly a matter of surprise to find any question

made about it. If it can be necessary to cite authorities upon this point the cases of *Ropps* v. *Barker*, 4 Pick. 239, & *Porter* v. *Rummery*, 10 Mass. R. 64, are very decisive upon the point.

But, finally and lastly, we are met with a motion for a new trial, because, as is alleged, one of the jury, who tried the cause, had been talked with, and had expressed an opinion unfavorable to the defendant. The affidavit of one Hanson, a member of the Methodist Church, was taken, in which he states, that John Gallison, one of the jury, before the trial, said to him, that "Sawyer would get his case; that that was clear enough; that they could prove nothing against him." And the counsel for the defendant urges, that this is conclusive of the facts; and that the juryman cannot be called to disprove it; and cites the case of *Caster* v. *Merest*, 3 Brod. & Bing. 272, in which it was held that, "where it was sworn, that handbills, reflecting on the plaintiff's character, had been distributed in Court, and shown to the jury on the day of the trial, the Court would not receive from the jury affidavits in contradiction, and granted a new trial against the defendant, though he denied all knowledge of the handbills." This case is shortly reported, and the above is the reporter's marginal abstract of the decision. Their report of what was said by the Court is in these words, "But the Court refused to admit the affidavits, thinking it might be of pernicious consequence to receive such affidavits in any case, or to assume that a jury had *been unduly influenced*; and, though the defendant denied all knowledge of the handbills, they made the rule absolute." The new trial in that case was manifestly granted upon the ground, that the defendant must be presumed to have caused the handbills to be distributed, notwithstanding his denial, with a design to affect the decision of the cause. Such practices should be discountenanced. And it might be reasonable to grant a new trial in such cases, first, because it could not be rendered perfectly certain that an undue influence had not been produced by the dispersion of the handbills in Court; and, secondly, as a merited rebuke of such attempts to produce an undue

influence in the trial of a cause. It is undoubtedly well settled that jurors shall not be heard to impeach a verdict which they may have returned. But the authorities in this country, if not in England, are abundant to show, that a juror, who has been implicated, in reference to a verdict, which he may have given, is admissible to remove the ground of implication. In *Dana* v. *Tucker*, 4 Johns. R. 487, the Court say, " The better opinion is, and such is the rule of this Court, that the affidavits of jurors are not to be received to impeach a verdict; but they may be received in exculpation of jurors, and in support of their verdict." In *Bishop* v. *Williamson*, 2 Fairf. 495, a juror was admitted to testify, that although he had been approached by one, who had been a witness in the cause, who had made remarks such as should not have been addressed to a juror out of Court, if known to be such, yet that the witness did not appear to know that he was a juror, In the same case, in the opinion as drawn up by the Court, it is stated, that " some slight proof was, also, offered to show, that Job White, one of the jury, had formed an opinion in the cause before the trial, unknown to the defendant; but it did not appear to have been any thing more than some impressions from what he had heard of the former verdict, and floating rumors, without professing to have had any knowledge of the facts." Now it is not stated that the juror was sworn as to any opinion he might have formed. But how did the Court come to the knowledge, that the juror had only, " some impressions from what he had heard of the former verdict and floating rumors, without professing to have had any knowledge of the facts ?" Who, other than the juryman himself, could have been competent to inform the Court of such particulars? Who else could have known his impressions; the extent and strength of them, or whence derived? It can scarcely be doubted, that the Court had before them the juror's own account in reference to those matters. In *Hilton* v. *Southwick*, 17 Maine R. 303, it was alleged, that a son of the plaintiff, and a witness in his behalf, had been guilty of some impropriety in regard to a juror, who being sworn, testified that no such impropriety took place, and

the motion which had been made for a new trial was there-upon overruled. Other cases might be cited to the same effect, but it would be a work of supererogation.

The juror's affidavit having been taken in this case we must look into it, and see how far his testimony conflicts with that of Hanson. He directly denies that he ever uttered what Hanson states that he did say. And states further, that he knew nothing of the cause or of the parties, till it came to Court ; nor of the facts in the cause, till it came to trial ; that when called on to the jury seat he had no impression, pre-judice, belief or knowledge concerning the facts, or in relation to them ; and that no impression had been communicated to him by any one in relation to the cause, except as the case was developed on trial. We cannot therefore consider the testi-mony of Hanson as otherwise than neutralized by that of the juror.

Exceptions and motions for a new trial are overruled, and judgment must be entered on the verdict.